# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

№ 05-CV-5462 (JFB) (AKT)

ANTHONY T. SMITH,

Plaintiff,

VERSUS

DELTA INTERNATIONAL MACHINERY CORP., JKR ASSOCIATES LLC, JKR PROPERTY MANAGEMENT, ED KURTZ, AND VIVIAN BOVA,

Defendants.



Memorandum and Order
May 24, 2007

JOSEPH F. BIANCO, District Judge:

Plaintiff Anthony Smith ("Smith") commenced this action in the Supreme Court of the State of New York, Kings County, alleging claims for negligence, breach of warranty and strict product liability. Specifically, Smith brought the action to recover damages for injuries that he allegedly sustained to his hand while operating an electric saw manufactured by defendant Delta International Machinery Corporation ("Delta") at a building in Brooklyn, New York.

On November 21, 2005, defendant Delta removed the action to this Court. On November 10, 2006, Smith filed a motion to remand the case due to lack of diversity jurisdiction and a motion to strike the ninth affirmative defense of defendants JKR Associates LLC ("JKR"), Ed Kurtz, and Vivian Bova (collectively, the "JKR Defendants").[1] The JKR Defendants cross-moved for summary judgment dismissing all claims against them.

With respect to the jurisdictional issue, it is undisputed that there is a lack of complete diversity between the current parties to the lawsuit because plaintiff Smith and the JKR Defendants are all New York citizens for

---

[1] Although Delta makes the jurisdictional argument "in the alternative," the Court must consider the jurisdictional issue first before addressing the motion to strike and, thus, will address the issues in that order.

jurisdictional purposes. Thus, if the JKR Defendants are properly named in this action, the parties agree that this Court has no jurisdiction and remand is required. However, defendants contend that diversity jurisdiction exists and removal is proper because the JKR Defendants have been fraudulently joined to the lawsuit by Smith.

For the reasons that follow, the Court concludes that defendants have failed to meet their burden of demonstrating fraudulent joinder and, thus, this Court lacks subject matter jurisdiction. Accordingly, the action must be remanded to state court.

I. BACKGROUND

On August 4, 2005, Smith, a citizen of the State of New York, filed a complaint in state court, alleging that he was injured on September 28, 2004, in the course of cutting wood at a building located at 2610 Glenwood Road, Brooklyn, New York ("the Building"). (Compl. ¶ 13.) Specifically, Smith alleged that four fingers on his left hand were severed while he was using a Delta saw. (Id.) Smith further alleged that he was using the saw in connection with construction work he was performing at the Building. (Id. ¶ 43.) Smith named the following entities and individuals as defendants: Delta, whose principal place of business is Tennessee; JKR, whose principal place of business is New York; and Ed Kurtz, the managing member and principal owner of JKR, and Vivian Bova, JKR's senior secretary, who are residents of New York. (Compl. ¶¶ 2, 5, 11, 12.) The Complaint alleged, among other things, that the JKR Defendants acted as a general contractor and/or construction manager for the construction at the Building. (Id. ¶ 42.)

On November 21, 2005, defendant Delta removed the state lawsuit to this Court. On January 16, 2006, an Amended Complaint was filed, which added Kelly Smith, who is plaintiff's spouse, as a plaintiff in connection with a claim for loss of consortium. The Amended Complaint asserts, among other things, common law negligence claims and Labor Law claims against the JKR Defendants.[2] Smith has set forth a number of allegations with respect to his injuries, including the following: (1) that on September 24, 2004, he was engaged in construction work at the Building, in the course of his employment with Glenwood KSR Associates, LLC ("Glenwood"), when he suffered permanent injuries (Am. Compl. ¶¶ 22-23); and (2) that defendants JKR and/or Ed Kurtz and/or Vivian Bova were the owner's agents and general contractors for the work in progress at the Building, and had overall responsibility for the job (Id. ¶¶ 24-25).

It is undisputed that, following his injury, Smith applied for and received workers' compensation coverage. Specifically, in a decision dated September 13, 2005, the State of New York Workers' Compensation Board determined that plaintiff's employer was Glenwood, which owned the Building, and that his accident happened within the course of his employment at that company, thereby entitling him to benefits. (Ras Aff., Ex. B.)

---

[2] The differences between the initial Complaint filed in state court and the Amended Complaint are immaterial for purposes of the jurisdictional issue.

2

## II. Discussion

In the instant motion, defendants contend that the JKR Defendants were fraudulently joined as defendants because there is no basis for liability against them and, thus, removal was proper because diversity jurisdiction exists. Plaintiffs assert that the JKR Defendants have not been fraudulently joined because they have liability for Smith's injuries based upon their involvement in the construction activities at the Building. Therefore, plaintiffs argue, the current lack of complete diversity of the parties requires remand to state court. As set forth below, having carefully considered the submissions of the parties, there is an insufficient basis for the Court to conclude that JKR was fraudulently joined to this lawsuit. Thus, the Court lacks jurisdiction over this lawsuit and the case must be remanded.

### A. Legal Standard

"Generally, a defendant in an action pending in state court may remove that case to federal court only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)). "When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00-CV-1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. April 17, 2006) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quotation omitted)). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Intern., Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)); *accord Somlyo v. J. Lu-Rob Enter., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006).

Section 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). As such, "any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co. v. Housing Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir.1983)).

It is axiomatic that federal courts only have diversity jurisdiction when there is complete diversity between the parties – that is, when all plaintiffs are citizens of different states from all defendants. *See* 28 U.S.C. § 1332; *Advani Enters., Inc. v. Underwriters At Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998). However, as the Second Circuit has made clear, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998). When asserting fraudulent joinder, the removing defendant bears "a heavy burden."

3

*Id.* Specifically, "[i]n order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (citing *Pampillonia*, 138 F.3d at 461). Moreover, in this context, "all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461.

In analyzing the fraudulent joinder issue, the court is permitted to look beyond the pleadings to resolve this jurisdictional question. *See Building and Const. Trades Council of Buffalo, N.Y. and Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 150 (2d Cir. 2006) ("Although this ruling required the district court to look outside the pleadings, a court has discretion to do so when determining whether it has subject matter jurisdiction.") (citing *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002)); *see also Pampillonia*, 138 F.3d at 461-62 (looking to affidavits to determine if plaintiff's complaint alleged a sufficient factual foundation to support claims); *Consol. Fen-Phen Cases*, No. 03-CV-3081 (JG), 2003 WL 22682440, at *3 (E.D.N.Y. Nov. 12, 2003) (stating that, in analyzing fraudulent joinder, "courts can look beyond the pleadings to determine if the pleadings can state a cause of action"); *Arseneault v. Congoleum Corp.*, No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *6 (S.D.N.Y. March 26, 2002) (considering deposition testimony and other material outside pleadings in order to resolve claim of fraudulent joinder).

B. Analysis

As noted *supra*, it is undisputed that, following his injury, Smith applied for and received workers' compensation coverage, and that the Workers' Compensation Board determined that Smith's employer was Glenwood. However, for the purpose of determining whether diversity jurisdiction exists, the key question is whether JKR is a "special employer" of Smith as a matter of law under New York workers' compensation law. If this issue cannot be resolved at this juncture, leaving open the possibility that plaintiffs could state a claim against a non-diverse defendant, such as JKR, then the case must be remanded to state court. *See Whitaker*, 261 F.3d at 207 (2d Cir. 2001) (citation omitted).

Smith asserts two claims against JKR, one of the non-diverse defendants at issue here.[3] First, Smith alleges that JKR acted as a general contractor at the Building by arranging for others, including Smith, to perform construction work in the Building. Smith contends that, because JKR was acting as a general contractor for the ongoing construction work, it is subject to certain nondelegable duties under Labor Law §§

---

[3] Although defendants argue that Kurtz and Bova have also been fraudulently joined as defendants, the Court will focus initially on the fraudulent joinder issue as it relates to JKR; if JKR is a proper defendant in this case, then there is no complete diversity of the parties and no jurisdiction exists regardless of whether or not Kurtz and Bova were properly joined. Thus, as set forth *infra*, because the Court finds that defendants have failed to prove fraudulent joinder of JKR, the Court need not address the fraudulent joinder issue as it relates to defendants Kurtz and Bova because it is moot.

241(6) and 200, including the duty to abide by the New York State Industrial Code (regarding the guarding requirements for power driven machinery), which were allegedly violated and led to Smith's accident. Second, Smith asserts a common law negligence claim against JKR based on the alleged involvement of its employees at the Building. Specifically, Smith's claims focus on the involvement of Clive Cole ("Cole"), who worked for JKR at the Building,[4] in causing Smith's accident. Cole testified in his deposition that, with respect to work done at the Building prior to and on the date of the accident, he would at times tell Smith what jobs to do at the Building. (Cole Dep. at 160-61.) On the date in question, a tenant's door on the fourth floor needed to be fixed, and Cole told Smith to go to the basement to cut wood for use in repairing the door. (Id. at 167.) Moreover, Cole testified that he had used the saw himself on other occasions and never saw a blade guard or supporting legs. (Cole Dep. at 89-92.)

Defendants assert that there is fraudulent joinder of JKR because JKR was Glenwood's managing agent, and, thus, under agency and special employment principles, it is entitled to assert the defense, under New York law, of the exclusivity of workers' compensation. However, as set forth below, the Court concludes that defendants have failed to meet their burden of demonstrating, by clear and convincing evidence, that the workers' compensation defense is so clearly applicable to JKR that it is impossible for Smith to state a claim against JKR.

The exclusivity provision of New York's workers' compensation law precludes an employee's recovery against an employer in a personal injury lawsuit for job-related injuries where the employee has already elected to receive workers' compensation. *See* Workers' Compensation Law § 29[6] ("The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee ... when such employee is injured ... by the negligence or wrong of another in the same employ."). Moreover, it is well settled that, if an employee elects to receive workers' compensation benefits, that employee cannot sue any employer with which he had a

---

[4] Although Cole testified that he was not certain whether, at the time of the accident, he was employed by Glenwood or by JKR (Cole Tr., at 35-36), JKR's principal owner, Kurtz, indicated that Cole was an employee of JKR at the time of the accident. Specifically, at Kurtz' deposition, in response to a question by plaintiffs' counsel, Kurtz indicated that JKR's quarterly withholding documents included the names of all JKR employees, and that such documents indicated that Cole was an employee at the time of the accident:

Q: So just to make it clear on the record, would it be fair to say that as of the quarter ending about October 31, 2004, JKR Associates, LLC's employees consisted of Vivian Bova, Manuel Cruz, Michelle Dimase and Clive Cole?

A: [referring to one of the quarterly withholding documents] It says that, yes.

(Kurtz Tr., at 67-68.) Therefore, based on Kurtz' testimony, the Court finds that there is, at a minimum, a genuine factual issue as to whether Cole was an employee of JKR at the time of the accident which, at this juncture of the case, must be resolved in favor of plaintiffs, the party opposing the exercise of federal jurisdiction. Accordingly, for the purposes of this motion, Cole must be considered to have been an employee of JKR at the time of the accident.

5

"special employment" relationship.[5] *See* N.Y. Workers' Comp. Law § 29[6]; *see also Thompson v. Grumman Aerospace Corp.*, 585 N.E.2d 355 (N.Y. 1991); *Abuse v. Mack Trucks*, 571 N.Y.S.2d 492 (N.Y. App. Div. 1991). "A special employee is defined as 'one who is transferred for a limited time of whatever duration to the service of another'"; a "special employer" is the employer to whom that employee is transferred. *Alvarez v. Cunningham Assocs., L.P.*, 800 N.Y.S.2d 730, 731 (N.Y. App. Div. 2005) (quoting *Thompson*, 585 N.E.2d at 357). Courts have found that the "[p]rincipal factors in determining whether a special relationship exists include the right to control the work of the employee, the method of his or her payment, the furnishing of equipment, the right to discharge the employee, and the relative nature of the work." *Alvarez*, 800 N.Y.S.2d at 731 (citing *Matter of Shoemaker v. Manpower, Inc.*, 635 N.Y.S.2d 816 (N.Y. App. Div. 1996)). However, "[t]he key to the determination is 'who controls and directs the manner, details and ultimate result of the employee's work.'" *Alvarez*, 800 N.Y.S.2d at 731 (quoting *Thompson*, 585 N.E.2d at 358).

Although defendants argue that JKR is a special employer merely because it was functioning as Glenwood's managing agent in connection with the Building, the analysis is not that simple. As a threshold matter, there appears to be some dispute over whether JKR was operating as a managing agent at the Building. In particular, defendant Kurtz testified at his deposition that JKR did not manage the property nor did it provide any services for Glenwood. (Kurtz Dep. at 17.) However, even assuming that JKR had the title of managing agent, the title alone is not necessarily dispositive on the issue of whether Smith was a special employee of JKR. In other words, regardless of the title, the entity must demonstrate that it controlled and directed the manner, details and ultimate result of the employee's work. Although that type of relationship may often exist when an entity is functioning as a managing agent for the employer, a managing agent is not *per se* a special employer. *See, e.g., Reynosa v. Kensington Mgmt. Servs., Inc.*, 580 N.Y.S.2d 341, 342 (N.Y. App. Div. 1992) ("In this personal injury action by plaintiff against the owner, New Heights, and the managing agent, Kensington, of the Washington Heights apartment building where he was employed as the superintendent, there are questions of fact presented as to whether Kensington was plaintiff's special employer."); *see also Gonzalez v. Lovett*, 644 N.Y.S.2d 249, 249-50 (N.Y. App. Div. 1996) (finding no "special employee" relationship between managing agent and employee of owner of building where injury occurred because managing agent "failed to demonstrate that plaintiff had been transferred by his employer for a limited time to the service of defendant or that the employer surrendered control over its employee").[6] Thus, in the instant case, JKR

---

[5] Smith's suggestion, that a finding by the Workers' Compensation Board that one company is Smith's employer precludes inquiry as to whether another entity is a "special employer" for Workers' Compensation purposes, is without merit. The Court can and must consider the "special employer" issue as to JKR even though the Workers' Compensation Board has issued a ruling regarding Glenwood.

[6] The lack of a *per se* rule of "special employer" status based simply on a claimed agency relationship between building owner and managing agent is also reflected in cases where individuals who are employees of managing agents have been found not to be special employees of building owners. *See, e.g., Kapovic*

6

must demonstrate the requisite control and direction over Smith in order to establish his status as a "special employee" of JKR.[7]

---

v. 450 Lexington Venture, 720 N.Y.S.2d 470 (N.Y. App. Div. 2001) (finding that plaintiff, who was found to be a special employee of the managing agent, was not a special employee of the building owner); Granieri v. 500 Fifth Ave. Assocs., 637 N.Y.S.2d 74, 75 (N.Y. App. Div. 1996) (finding that an employee under the control and supervision of the managing agent could assert Labor Law claim against building owner because he was not a "special employee" of owner).

[7] Although defendants cite several New York cases to support their argument that a managing agent is *per se* a special employer, those cases do not stand for such a broad rule; rather, in those cases, the requisite control and direction was either conceded by the plaintiff or was demonstrated by the managing agent. See, e.g., Alvarez, 800 N.Y.S.2d at 731-32 (managing agent "had exclusive control and direction of the manner, details, and ultimate result of the plaintiff's work on the date of the subject accident"); Seudath v. Mott, 609 N.Y.S.2d 319, 320 (N.Y. App. Div. 1994) (plaintiffs' complaint named defendants "as the managing agents of the premises and states that they 'operated', 'maintained', and 'controlled' the premises"). Similarly, although defendants cite Fung v. Japan Airlines Co., Ltd., 820 N.Y.S.2d 89 (N.Y. App. Div. 2006), that decision is of limited value in the context of this case because it did not specifically mention or analyze the "special employee" issue. In Fung, a Port Authority employee slipped on ice in a parking lot and the agreement between the Port Authority and Japan Airlines specifically obligated Japan Airlines to contract for snow removal services. Id. The court held without extensive analysis that Japan Airlines, as the managing agent of the Port Authority, was immune from suit by the exclusivity provision of Workers' Compensation. See id.

Smith argues that, although JKR acted as the general contractor for ongoing construction work being performed at the Building, JKR did not direct the manner, method or details of Smith's work at the site and, thus, cannot claim to be a special employer immune from suit. In support of his position that he was not a special employee of JKR, Smith points to the following: (1) on the date of the incident, Smith was employed by Glenwood; (2) in the Fall of 2004, JKR had only four employees (defendant Bova, Manuel Curz, Michelle DiMase, and Cole) (Kurtz Dep., at 67-68); (3) Smith has never worked for JKR (Kurtz Dep. at 45-46); (4) defendant Kurtz, who is the 99 percent owner of JKR, acknowledged that he did not control Smith's on-site activities on a daily basis at the site, or direct or supervise Smith in the conduct of his work (Kurtz Dep. at 53-54; Ex. P. ¶¶ 10-11); (5) defendant Bova testified that she did not control the construction work done at the subject building (Bova Dep. at 41; Ex. P, ¶¶ 12-13); and (6) with respect to the accident in question, although JKR's employee Cole told Smith to cut the wood while he was on the telephone, Cole did not instruct Smith on how to perform that work (Cole Dep. at 167-70). In fact, in its answers to interrogatories, JKR "denied that JKR directed or controlled, or had any legal relationship to the happening of the subject incident." (Ex. Q at ¶ 13.)[8] Thus, Smith contends that "the JKR Defendants, individually and collectively, through their employee Clive Cole, provided guidance as to the type of work that was to be performed, while not controlling the method and manner

---

[8] Kurtz testified that he considered Cole to be a porter for various buildings, including the building at issue, and also stated that it was not Cole's role to tell Smith what to do, although Cole might serve as a conduit for communications between Kurtz and Smith. (Kurtz Dep., at 30-33.)

7

of the work." (Pls.' Br., at 12.)

Based on the evidence pointed to by Smith, and having reviewed the entirety of the parties' detailed submissions (including the affidavits and deposition testimony), the Court cannot conclude that JKR has sufficiently demonstrated Smith's special employment status so as to warrant a finding that there is no possibility that Smith could state a claim against JKR. That is, at this stage of the litigation based on the record before this Court, defendants have failed to meet their burden of establishing that they sufficiently controlled and directed Smith's activities at the Building so as to entitle JKR as a matter of law to rely on the affirmative defense of the exclusivity of workers' compensation based on the existence of a special employment relationship. While JKR may be able to demonstrate such an entitlement at some future point, there is an insufficient basis at this juncture of the case to conclude that JKR was a special employer of Smith, and, therefore, fraudulently joined as a defendant in this action.[9]

Defendants also argue that a special employment relationship exists between Smith and JKR because JKR and Glenwood acted as a single integrated entity in employing Smith. Thus, according to defendants, because JKR and Glenwood operated as alter egos of each other, and it is undisputed that Glenwood was Smith's employer, the exclusivity provisions of New York Workers' Compensation Law also bar Smith from recovering against JKR; as such, defendants argue that joinder of JKR as a defendant in this action was improper and the exercise of federal jurisdiction is appropriate. (*See* JKR Defs.' Br. at 8.)

While is well-settled that two entities "directed by common management and function[ing] under a combined budget" may be construed as a single employer for the purposes of the exclusivity provisions of New York workers' compensation law, *see, e.g., Ramnarine v. Mem. Ctr. for Cancer and Allied Diseases*, 722 N.Y.S.2d 493, 494-95 (N.Y. App. Div. 2001); *Wheeler v. Couret*, 182 F. Supp. 2d 330, 334-35 (S.D.N.Y. 2001), the Court rejects the application of this rule under the present circumstances of the instant case. JKR's assertions – namely, that the two entities share "office staff," have "some" of the same employees, use the same bookkeeper, and share a managing member – provide an insufficient basis for this Court to conclude that the entities were necessarily a "single integrated entity." (JKR Defs.' Br. at 8.) *See Cruz v. Regent Leasing Ltd. P'ship*,

---

[9] To the extent defendants argue in the alternative that, even if the "special employment" relationship cannot be established as a matter of law, fraudulent joinder nevertheless exists because there is no basis upon which the JKR Defendants can be held liable for the accident, the Court rejects that argument. At this time, defendants have not met their burden of proving that, based on the record before the Court, there is no possibility that JKR could be liable for the claims asserted by plaintiffs. Although JKR disputes that it functioned as a general contractor at the site or had any involvement in Smith's activities, Smith has made various allegations, and submitted evidence, to counter that suggestion. For example, as noted *supra*, Smith points to the role of Cole, JKR's employee, in connection with the events preceding the accident in the Building. Although Smith's proof on the issue of whether JKR was a general contractor or contributed to the accident in some way is far from conclusive, various facts are in dispute and there are insufficient grounds on the current record to conclude that there is no possibility that JKR could be liable in this action.

8

829 N.Y.S.2d 441, 442-43 (N.Y. Sup. Ct. 2006). Instead, the Court finds that defendants have fallen far short of their burden at this juncture to establish that there is no possibility that plaintiffs could demonstrate that JKR and Glenwood are not, in fact, "alter egos of each other." *See Longshore v. Paul Davis Sys. of Capital Dist.*, 759 N.Y.S.2d 204, 206 (N.Y. App. Div. 2003) ("Closely associated corporations, even ones that share directors and officers, will not be considered alter egos of each other if they were formed for different purposes, neither is a subsidiary of the other, their finances are not integrated, assets are not commingled, and the principals treat the two entities as separate and distinct."); *Sweeney v. City of New York*, 782 N.Y.S.2d 537, 544 (N.Y. Sup. Ct. 2004). Furthermore, as discussed *supra*, Smith has pointed to evidence suggesting that JKR operated separate and apart from Glenwood in relation to managing and directing activities at the Building. *See Buchner v. Pines Hotel*, 448 N.Y.S.2d 870, 872 (N.Y. App. Div. 1982) ("The individual princip[als] in this business enterprise, for their own business and legal advantage, elected to operate that enterprise through separate corporate entities. The structure they created should not lightly be ignored at their behest, in order to shield one of the entities they created from third-party common-law tort liability."). Therefore, because the Court cannot find as a matter of law on the current record that JKR and Glenwood were a single integrated entity during the period when Smith was employed by Glenwood, such that the exclusivity provisions of Workers' Compensation law would bar Smith from suing JKR, joinder of JKR as a defendant in this action cannot be deemed fraudulent at this time.

In sum, because the Court cannot find fraudulent joinder of JKR to this lawsuit, there is no complete diversity of the parties and the Court lacks subject matter jurisdiction. Accordingly, Smith's motion to remand the action to state court is granted.[10]

---

[10] Having concluded that the Court lacks subject matter jurisdiction, the Court will not address Smith's motion to strike the JKR Defendants' Ninth Affirmative Defense, nor will the Court consider the JKR Defendants' Cross-Motion for Summary Judgment. *See, e.g., Gross v. Home Depot U.S.A., Inc.*, 386 F. Supp.2d 296, 299 (S.D.N.Y. 2005) ("Since [defendant's] citizenship in New York destroys the complete diversity necessary for diversity jurisdiction, Plaintiff's motion to remand must be granted and this court need not, and must not, decide Defendants' motion to dismiss."). In addition, the JKR Defendants' motion for sanctions under Fed. R. Civ. P. 11 is denied because, among other things, there is an insufficient basis to support such action. *See Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

## III. CONCLUSION

For the foregoing reasons, Smith's motion to remand for lack of federal diversity jurisdiction is GRANTED. The action is hereby REMANDED to the Supreme Court of the State of New York, Kings County.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: May 24, 2007
Central Islip, New York

\* \* \*

The attorney for plaintiffs is Luis F. Ras, Esq., Ras Associates, PLLC, Ten Bank Street, Suite 650, White Plains, New York 10606. The attorney for defendant Delta is Michael Kim Berman, Esq., Smith Mazure Director Wilkins Young & Yagerman, P.C., 111 John Street, 20th Floor, New York, New York 10038. The attorneys for the JKR defendants are Renaud T. Bleecker, Esq., White & McSpedon, P.C., 875 Avenue of the Americas, Suite 800, New York, New York 10001, and June Diamant, Esq., 229 Linwood Avenue, Cedarhurst, New York 11516.